# Brolasky *versus* Gally's Executors.

1. A testatrix directed her estate real and personal to be sold, and vested in her executors "full power and authority to dispose of my real estate in fee simple or for a term of years or otherwise, in as full and large a manner" as she could do if living, and directed the proceeds of the sale to "be disposed of as hereinafter specified." *Held*, that this provision converted the realty into personalty from the death of the testatrix.

2. The provision to dispose of the real estate "for a term of years or otherwise," does not modify the direction to sell, but was to authorize the executor's to postpone the sale to a time when it might be sold for its "reasonable value."

3. A judgment was recovered against one of the distributees, who was also an heir of the testatrix, and his interest in the real estate sold by the sheriff. *Held*, that the judgment was not a lien upon his interest, and that the purchaser at the sale acquired no title to the land or its proceeds.

APPEAL from the Orphans' Court of Philadelphia by Simon Brolasky, in the matter of Ann C. Gally's estate.

The following case was stated for the opinion of the court:—

"Ann Catharine Gally, of Philadelphia, widow, deceased, by her will, dated October 5th 1858 and proved December 9th in the same year, provided, *inter alia*, as follows:—

[Brolasky *v.* Gally's Executors.]

" ' Whatever other property I may have at the time of my decease, whether real, personal or mixed, it is my will, and I do order, that the same be sold by my executrix and executor for its reasonable value, and the proceeds arising from the sale thereof shall be disposed of as hereinafter specified. And to effect this my intention, I do hereby vest in my executrix and executor, or the survivor of them, full power and authority to dispose of my real estate in *fee simple or for a term of years, or otherwise*, in as *full and large a manner* in every respect as I could myself do if living.

" ' I give and bequeath unto my grandson, Joseph Gally, of the city of Philadelphia, book-binder, the sum of one hundred dollars, to be paid to him by my executrix and executor, as soon as can be consistently with a proper settlement of all my debts, and I also free and discharge him, the said Joseph Gally, from the payment of a note of one hundred dollars which I hold against him, and in case of the death of the said Joseph Gally before the said sum of one hundred dollars be paid, then the same to merge in the residue of my estate.

" ' Item—I give and bequeath unto my granddaughter, Caroline Gally, daughter of my son Thomas J. Gally, deceased, the sum of one hundred and fifty dollars, to be paid to her as soon as conveniently can be, after the payment of all my debts ; but if she shall not survive me, then the same to merge in the residue of my estate.

" ' Item—The rest, residue and remainder of my estate, of what kind or nature whatsoever, and wheresoever the same may be, I give, devise and bequeath unto my said daughters, Susanna Catharine Brown, Ann Catharine Brown, and my son, Joseph Gally, and the children of my daughter, Maria D. Holby, deceased, in equal portions.  *  *  *  *  *  And the one fourth part of my estate herein bequeathed to my son Joseph Gally will include the sum of seven hundred and fifty dollars which I have advanced to him, that is to say, the said sum of seven hundred and fifty dollars which the said Joseph Gally is indebted to my estate, is to be deducted from the moneys that would be paid him as his full share if he were not so indebted : and in case of the death of the said Joseph Gally before the settlement and division of my estate, then it is my will, and I do order, that the sum of two hundred dollars be paid to his daughter Mary Wait, wife of George Wait, of the city of Philadelphia, and the balance of the said one-fourth part or share herein bequeathed to my son Joseph Gally, remaining after the payment of the said two hundred dollars, shall be equally divided between my daughters, Susanna Catharine Brown, Ann Catharine Brown, and the children of my daughter Maria D. Holby, deceased.

[Brolasky v. Gally's Executors.]

"Susanna Catharine Brown, a daughter, and Joseph Gally, are appointed executors.

"Ann Catharine Gally, at the time of her death, was seised in fee of a lot of ground with the messuages thereon erected, situate on the west side of Mayland street.

"The executors, on the 2d day of November 1864, sold the above-described lot of ground and messuages at public sale to Simon Brolasky, for $2350.

"Lavinia Holby, on the 24th day of November 1862, recovered a judgment against Joseph Gally for $2000 (by confession), upon which execution was issued and the interest of Joseph Gally in the real estate above described sold by the sheriff, February 2d 1863, to the said Simon Brolasky also.

"A deed for the premises above described, conveying the same to the said Simon Brolasky, was executed by the executors of the said Ann Catharine Gally, on the 23d day of March, A. D. 1865, tendered to him and payment of the purchase-money demanded; but he claimed to deduct from such purchase-money one-fourth of the amount, as due to him as purchaser of the interest of the said Joseph Gally.

"Joseph Gally died in 1865. No distribution has yet been made of the proceeds of the sale of the real estate of the said testatrix, so made by her said executors.

"This case stated is to be taken and considered as in the nature of a bill or petition in equity for the specific performance of the contract of purchase of the above-described premises by the said Simon Brolasky.

"If the court shall be of opinion that the sale by the sheriff of the interest of Joseph Gally in the said real estate passed the same to the said Simon Brolasky, then one-fourth part of the purchase-money of the premises above described is to be deducted from the same, and he is to be decreed to be entitled to a conveyance of the premises by the executors, on paying three-fourths only of the amount of the said purchase-money.

"If otherwise, then the said Simon Brolasky shall be decreed to pay the whole of the said purchase-money to the said executors, upon receiving a deed for the said premises."

The court below decided against Brolasky, and, in accordance with the terms of the case stated, directed him to pay the whole purchase-money to the executors on receiving from them a deed for the premises.

This decree was assigned for error.

*W. A. Husband* and *B. H. Brewster*, for appellant.—The order to sell in the will did not work a present conversion. The power to sell is qualified by the authority " to dispose of the real

estate for a term of years or otherwise," conveying no imperative order to sell, but giving them power to *lease.* · Every sentence and word must be considered in forming an opinion on a will: Turbett *v.* Turbett, 3 Yeates 187. The testatrix left room for other considerations, which might influence the executors after her death. The executors had an alternative, and there could be no present conversion: Nagle's Appeal, 1 Harris 262; Bleight *v.* The Bank, 10 Barr 131. But the conversion, if any, was afterwards defeated by the acts of the parties. They virtually elected to retain it as realty. The sale should have been in a reasonable time, but it remained unsold and in the enjoyment of the heirs, with the consent of the executors, for nearly six years. Joseph allowed his interest to be sold. The judgment against Joseph bound his fourth part of the realty, and all his interest passed to Brolasky.

*J. A. Clay,* for appellees.—Allison's Executors *v.* Wilson's Executors, 13 S. & R. 333, settled the law of equitable conversion in Pennsylvania. The party entitled to the proceeds has no estate in the land: Kramer *v.* Arthurs, 7 Barr 165; Morrow *v.* Brenizer, 2 Rawle 185. The discretion allowed to the executor which, according to Anewalt's Estate, 6 Wright 414, prevents conversion, is as to whether the land shall be sold or held as land. If there be a clear intention that the land shall be sold at all events, conversion takes place: Swann *v.* Fonnercan, 3 Ves. 47–50; Thornton *v.* Hawley, 10 Id. 129. Here the order *is* distinct, and the leading intention is that the land shall be turned into money. The power to lease cannot qualify the power to sell; that merely was granted to keep the property productive till sold.

The possession of the land by the heirs for six years will not raise an election to take as land. All must act: Miller *v.* Meetch, 8 Barr 417–425; Beatty *v.* Byers, 6 Harris 105; Fletcher *v.* Ashburner, 1 Bro. Ch. Ca. 497, 500, &c.

The legacy of Joseph is contingent upon his surviving until the estate is settled; he is now dead; the settlement has been delayed by Brolasky.

The opinion of the court was delivered, March 6th 1866, by

THOMPSON, J.—This is a clear case of a devise to executors to sell, and operated as a conversion of the realty into money from the moment of the decease of the testatrix, and thus was the descent broken.

The words used are : " And I order the same (the property real, personal and mixed) to be sold by my executrix and executor for its reasonable value, and the proceeds arising from the sale thereof shall be disposed of as hereinafter specified."

[Brolasky v. Gally's Executors.]

There is no discretion left in the executors, and none is to be found within the four corners of the will. Indeed it is manifest that the intention of the testatrix could not be carried out by the executors without the sale, and this proves with what intent the words were used. The intention of the testatrix in this as in other particulars is the governing rule. The clause following the words quoted do not modify their meaning, and this is evident from the whole will. They seem to have been used as directions to facilitate the power of the executors in making the sale, but they add nothing to their discretion. I incline to the argument of the defendant in error, that the words " to dispose of the real estate in fee simple, or for a term of years or otherwise," are intended to meet the case of a necessity which might exist, to postpone a sale to a time at which the property might be sold for its "reasonable value." This would be very proper; but still the direction was to sell and distribute the proceeds. This was all that was necessary to work a conversion. The doctrine in almost every conceivable aspect, seems well settled with us; and amongst the many cases to be found are Allison's Executors v. Wilson's Executors, 13 S. & R. 330, a case very much like this, in which the lien was disallowed as here in the court below; also Blight v. The Bank, 10 Barr 131; Parkinson's Appeal, 8 Casey 455; Anewalt's Appeal, 6 Wright 414; Chew v. Nicklin, 9 Id. 84. All these cases clearly show, and more might be cited, that a positive order or direction to sell in a will works a conversion of realty into money. That appears here, and nothing to contradict it. The court below were right, therefore, in holding that the appellant had no lien, and acquired no title to Joseph Gally's interest by the sale on execution to him.

What was said about election by the heirs to take the realty, was outside of the case; for not a single fact of which it was predicated, is to be found in the case stated. This is our chart, and we follow it. I do not think it would have made any difference in the result if the facts had been stated, but it would be extra-judicial to express any very decided opinion about what is not before us. The case was rightly decided below, and the decree is affirmed.